IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

ADAM BERGER and MARK PATRICK,

              Plaintiffs,                            3:14-cv-01661-PK

v.                                           FINDINGS AND
                                           RECOMMENDATION

DIRECTV, INC. and DIRECTV, LLC,

              Defendants.

---

PAPAK, Magistrate Judge:

Plaintiffs Adam Berger and Mark Patrick filed the instant action against defendants

DIRECTV, Inc., and DIRECTV, LLC, ("DIRECTV") alleging that DIRECTV engages in a

"fissured employment scheme" by attempting to shed its role as a direct employer and purporting

to dissociate itself from the workers responsible for its products and services. This scheme

allegedly led to DIRECTV's failure to pay Plaintiffs minimum and overtime wages, failure to

1 - FINDINGS AND RECOMMENDATION

properly calculate Plaintiffs' regular rate of pay, and issuing deductions from Plaintiffs' pay in

violation of the federal Fair Labor Standards Act ("FLSA") and Oregon wage laws.

Now before the court is DIRECTV's motion to dismiss (#15) pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure for failure to state a claim and for failure to meet the

pleading requirements set forth in Rule 8(a)(2). For the reasons discussed below, DIRECTV's

motion should be granted in part and denied in part.

## PROCEDURAL BACKGROUND

Plaintiffs filed their amended complaint (#4) on November 12, 2014, alleging violations

of the FLSA and Oregon law. Specifically, Plaintiffs allege that DIRECTV's FLSA violations

included: (1) "failing to pay all minimum wage and overtime wages due to Plaintiffs," (2)

"failing to properly calculate Plaintiffs' regular rate of pay for determining the overtime premium

pay owed," and (3) improperly deducting money from Plaintiffs' pay. Amended Complaint, #4,

¶ 75. Plaintiffs allege that those failures also violate ORS 652.010 and 652.261, and that

DIRECTV's wilful failure to pay Plaintiffs all sums due to them upon termination violates ORS

652.150. *Id.* at ¶¶ 81, 83.

In August 2012, Plaintiff Berger opted-in to a collective action brought against

DIRECTV on similar grounds as the action now before this court. A class of plaintiffs brought

that case, *Lang et al. V. DIRECTV, Inc.*, No. 10-1085-NJB, in February 2010 in the Eastern

District of Louisiana. The court conditionally certified the class after denying a motion for

summary judgment. The *Lang* court decertified the class, however, after determining that

damages would be difficult to calculate on common proof at trial. Pl.'s Response, #29, 4. The

*Lang* court dismissed all opt-in plaintiffs without prejudice. *Id.* On November 1, 2013, Plaintiff

2 - FINDINGS AND RECOMMENDATION

Berger filed his individual claims against DIRECTV in one of eleven actions filed by the

decertified *Lang* plaintiffs in the Central District of California.  Amended Complaint, #4, ¶ 60.

A judge presiding over nine of the eleven actions ordered those actions transferred to the districts

in which plaintiffs actually performed their work for defendants.  *Demarco, et al. v. DIRECTV,*

*Inc., et al.*, No 13-cv-8127-ABC-E (Doc. 64).  Similarly, in the case in which Plaintiff Berger

brought his claims, *Acfalle, et al. V. DIRECTV, Inc., et al.*, No 13-8108-ABC, the court

dismissed the claims of 279 plaintiffs without prejudice with leave to re-file their claims in their

home districts.

On January 5, 2015, DIRECTV filed its motion to dismiss (#15).[1]  On February 5, 2015,

the parties stipulated to stay proceedings pending a decision from the Judicial Panel on

Multidistrict Litigation ("MDL Panel") based on Plaintiffs' Motion for Consolidation and

Transfer of Related Action.  The MDL Panel issued an order (#30-1) on February 6, 2015,

denying transfer of this action and this court lifted the stay on February 10, 2015 (#28).  On

February 12, 2015, plaintiffs filed their response in opposition to DIRECTV's motion (#29).  On

February 26, 2015, DIRECTV filed a reply in support of its motion (#31).

On March 4, 2015, the court heard oral argument on DIRECTV's motion.  The matter is

fully submitted and ready for decision.

---

[1] DIRECTV failed to comply with the Local Rules in several respects.  First, DIRECTV
combined its motion with their supporting memoranda.  *See* LR 7-1(b) ("Every motion must be
accompanied by a *separately* filed legal memorandum." (emphasis added)).  Second, DIRECTV
did not file each declaration in support of the motion as a separate document.  *See* LR 10-3(a)
("Affidavits or declarations must be filed as separate documents with their own captions and
footers.").  DIRECTV is reminded to that they are required to comply with the Local Rules.

## FACTUAL BACKGROUND

Plaintiffs are two technicians who formerly installed DIRECTV satellite television equipment in Oregon.  DIRECTV is a Delaware corporation with its principal place of business in El Segundo, California.  Amended Complaint, #4, ¶ 6–7, 8.  Plaintiffs worked for "subordinate entities that were ultimately acquired by DIRECTV," and plaintiff Berger operated as an independent contractor for DIRECTV.  Amended Complaint, #4, ¶ 12.

DIRECTV oversees and operates a "Provider Network" comprised of intermediary entities known as "Home Service Providers" and secondary intermediaries called "Secondary Providers."  Amended Complaint, #4, ¶ 14.  DIRECTV has merged with many of the HSPs, leaving three primary HSPs standing as independent entities still within the Provider Network; DirectSat, MasTec, and Multiband.  Amended Complaint, #4, ¶ 16.  DIRECTV's relationship with the Provider Network, according to Plaintiffs, is controlled by a series of "Provider Agreements" that provide the framework for the business relationship between DIRECTV and the constituents of its Provider Network.  Amended Complaint, #4, ¶ 17.  Included in the Provider Agreements are (1) required policies and procedures with which hired technicians must comply; (2) uniform and identification specifications, including requirements to show and wear DIRECTV insignia; and (3) equipment installment specifications.  Amended Complaint, #4, ¶ 18–19.

While employed as technicians, Plaintiffs received daily schedules from a DIRECTV dispatching system.  Plaintiffs would complete jobs "assigned by Defendants in the prescribed order on the daily work schedule."  Amended Complaint, #4, ¶ 21.  Their duties required telephonic check-ins with DIRECTV dispatchers, reports to DIRECTV following completion of

installations, and coordination with DIRECTV employees to activate individual service for customers. *Id.*

Plaintiffs' payroll was administered by non-DIRECTV providers, identified above, and those providers also directly paid Plaintiffs. Amended Complaint, #4, ¶ 36.

## LEGAL STANDARD

### I.    Motion to Dismiss for Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation omitted). Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In ruling on a Rule 12(b)(6) motion to dismiss, a court must take the complaint's allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Keams v. Tempe Tech. Inst., Inc.*, 39 F.3d 222, 224 (9th Cir. 1994). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n. 2 (9th Cir. 2008). Moreover, the "court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756,

5 - FINDINGS AND RECOMMENDATION

763 (9th Cir. 2007).

## II.    Legal Standard under the FLSA

The FLSA provides that a covered employer shall not employ any employee "for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Courts have further defined "employer" as one who "exercise[s] economic and operational control over the employment relationship." *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999)

The FLSA provides a remedy for employees who have not been paid overtime compensation, and states that an employer who violates § 207 "shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). At the same time, the FLSA provides a number of exemptions from these overtime regulations for certain employees, including "executive employees," 29 C.F.R. § 541.100, "administrative employees," § 541.200, "professional employees," § 541.300, "computer employees," § 541.400, and "outside sales employees," § 541.500, as well as "combination exemptions," for employees who "perform a combination of exempt duties" but might not directly qualify under any specific exemption. *See id.* at § 541.708.

### III.    Oregon State Law Claims

Oregon Revised Statutes 653.055 provides that: "[a]ny employer who pays an employee less than the wages to which the employee is entitled under ORS 653.010 to 653.261 is liable to the employee affected." ORS 653.261 provides in relevant part:

> The Commissioner of the Bureau of Labor and Industries may adopt rules prescribing such minimum conditions of employment, excluding minimum wages, in any occupation as may be necessary for the preservation of the health of employees. The rules may include, but are not limited to . . . hours of work, but not less than eight hours per day or 40 hours per week; however, after 40 hours of work in one week overtime may be paid, but in no case at a rate higher than one and one-half times the regular rate of pay of the employees when computed without benefit of commissions, overrides, spiffs and similar benefits.

Oregon law broadly defines "employ" as "to suffer or permit to work . . . ." ORS 653.010(2). The same statute defines "employer" as "any person who employs another . . . ." ORS 653.010(3).

### ANALYSIS

In support of their FLSA claim, Plaintiffs assert that DIRECTV's policies and practices of imposing charge backs, failing to compensate Plaintiffs for all hours worked, and failing to reimburse expenses incurred in the course of employment resulted in Plaintiffs routinely working at an effective wage rate of less than the applicable minimum wage. Amended Complaint, #4, ¶ 64, 68. Plaintiffs also assert that they routinely spent more than forty hours per week performing tasks for the benefit of DIRECTV without receiving the benefit of overtime premiums as required by applicable law, a violation of both the FLSA and ORS 653.261. *Id.* ¶ 55.

In its motion, DIRECTV argues (1) that Plaintiffs have not pled sufficient facts to

7 - FINDINGS AND RECOMMENDATION

establish that they were "employees" of DIRECTV under the FLSA or Oregon Law; (2) Plaintiffs

have not pled facts supporting a claim that they were not paid minimum and overtime wages

under as required by the FLSA and Oregon Law; and (3) Plaintiffs have not pled facts supporting

their Oregon law claim that DIRECTV failed to pay all sums due upon termination in violation

of ORS 652.150 ("Final Pay Claim").  Each issue will be analyzed in turn.

## I.      The Employer-Employee Relationship

DIRECTV first moves to dismiss Plaintiffs' claims brought under the FLSA and Oregon

law because "they have not, and cannot, properly plead the existence of an employment

relationship with DIRECTV."  Def.'s Motion, #15, 9.  DIRECTV takes issue with the Amended

Complaint, stating that

> [I]t cannot be determined whether Plaintiffs are alleging that they
> were direct employees of another entity and DIRECTV was the 'joint
> employer' along with the other entity or entities; or whether Plaintiffs
> are alleging that they were independent contractors of another entity,
> and that DIRECTV was somehow their direct employer and not the
> other entity; or whether Plaintiffs are alleging that although they had
> an independent contracting relationship with another entity, that other
> entity was really a direct employer and DIRECTV was their joint
> employer.

Def.'s Motion, #15, 9–10.  The Amended Complaint does not directly address DIRECTV's

concern.  Instead, Plaintiffs allege that "DIRECTV, through the Providers, exerted control over

Plaintiffs sufficient to established that they employed Plaintiffs . . . under the FLSA."  Amended

Complaint, #4, ¶37.  While DIRECTV argues that this is conclusory and overbroad and therefore

fails to meet the relevant pleading standards, that argument ignores the fact that the FLSA's

definition of "employer" is not limited to the common law definition, but must instead be given

an expansive interpretation in order to effectuate the FLSA's broad remedial purpose.  *Lambert*

8 - FINDINGS AND RECOMMENDATION

*v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999).

A.    **Relevant Definitions**

The FLSA's definition of employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. 203(d).  The applicable statutory definition of employer under Oregon law is any person who "suffers," or permits, another to work.  ORS 653.010(2); ORS 653.010(3).

DIRECTV points this court to a definition of "employer" used by the Oregon courts in the absence of controlling statutory definitions: "one who hires another for wages."  Def.'s Motion, #15, 10 (citing *Kibec v. Balog*, No. 3:12-cv-559-ST, 2012 WL 2529202 at *3 (D. Or. May 29, 2012), citing *Pope v. Judicial Dep't*, 79 Or. App. 732, 721 P.2d 462, 464 (1986)).  In recommending the adoption of this definition for present purposes, DIRECTV ignores the fact that the *Kibec* court applies the wage-focused definition only after noting that "[t]he applicable statutes on which the [claim] appears to be based . . . do not define an 'employer' . . . ." *Kibec*, 2012 WL 2529202 at *3.  Here, however, the relevant statutes under which Plaintiffs bring their claims, the FLSA and ORS 653.010(3), include statutory definitions of "employer."  The Oregon common law definition cited by DIRECTV, therefore, is inapplicable to the instant case.

Additionally, the FLSA recognizes the concept of "joint employment," or a situation in which employers may share control of an employee based on common or hierarchical control on behalf of the multiple employers.  29 C.F.R. 791.2; *see also Cejas Commercial Interiors v. Torres-Lizama*, 260 Or. App. 87, 101 (2013) (noting that legislative history of ORS 653.010 supports the understanding that, in defining "employ" to include "to suffer or permit to work," the legislature intended to include more relationships than were traditionally included).

9 - FINDINGS AND RECOMMENDATION

Additionally, the Oregon courts have recognized "joint employment" as a basis for finding an employer-employee relationship in the context of a claim brought under ORS 653.010.  *Delgado v. Del Monte Fresh Produce, N.A., Inc.*, 260 Or. App. 480, 317 P.3d 419, 422–23 (2014) (upholding trial court decision that allowed special jury verdict finding "joint employment" created an employer-employee relationship after applying a multi-factor test).  Thus, to the extent DIRECTV's motion takes issue with Plaintiffs' perceived reliance on "joint employment" to establish an employer-employee relationship, it is incorrect.

### B.    The Economic Reality Test

As the parties concede, whether an employment relationship exists under the FLSA is determined through the application of the multi-factor "economic reality" test and evaluation of the totality of the circumstances.  *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983); *Torres-Lopez v. May*, 111 F.3d 633, 639 (9th Cir. 1997); *Cejas Commercial Interiors*, 260 Or. App. at 94 (adopting the economic-realities test).  That test looks to four "regulatory factors" and roughly eight "nonregulatory factors" when determining the economic realities of a potential employer-employee relationship.  *Torres-Lopez v. May*, 111 F.3d at 640.

In using the economic realities test, the Ninth Circuit employs four "regulatory factors," which focus on whether an alleged employer (1) has the power to hire and fire the alleged employee; (2) controls employee work schedules or conditions of employment; (3) determines the wage rate and method of payment; and (4) maintains employment records.  *Hale v. State of Ariz.*, 993 F.2d 1387, 1394 (9th Cir. 1983).  I note that "these particular factors are merely guidelines . . . .  The determination of whether an employer-employee relationship exists does not

depend on isolated factors but rather upon the circumstances of the whole activity." *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1324 (9th Cir. 1991).

DIRECTV argues that Plaintiffs' complaint pleads facts to support only the "control" factor, and highlights the fact that Plaintiffs do not allege that DIRECTV hired them. Def.'s Motion, #15, 11 (citing Amended Complaint, #4, ¶ 34). While the control factor is not dispositive, the Ninth Circuit has, in similar circumstances, focused on a high degree of control exerted by the alleged employer over the alleged employee in finding an inference of an employment relationship sufficient to reverse and remand a finding of no merit on a claim arguing that an employment relationship existed. *Baker v. McNeil Island Corrections Ctr.*, 859 F.2d 124, 128–29 (9th Cir. 1988).

In their complaint, Plaintiffs offer factual allegations regarding DIRECTV's direct control over Plaintiffs and indirect control by way of agreements with, and control over, the Provider Network. Amended Complaint, #4, ¶¶ 17–19. Plaintiffs describe the relationship between DIRECTV and the HSPs and the provisions contained within the Provider Agreements that specifically control Plaintiffs. Amended Complaint, #4, ¶¶ 28–32. Plaintiffs identify Ironwood Communications and DTV Home Services, LLC as entities that allegedly jointly employed Plaintiffs along with DIRECTV. Amended Complaint, #4, ¶¶ 27–30.

In terms of direct control, Plaintiffs exhaustively allege DIRECTV's control over their work schedules, which are transmitted through DIRECTV's dispatching systems, and the order of individual jobs Plaintiffs were obligated to complete. Amended Complaint, #4, ¶¶ 19–21. Additionally, Plaintiffs allege that DIRECTV exerted direct control over many fundamental aspects of Plaintiffs' work in terms of insignia on Plaintiffs' uniforms, DIRECTV-provided

11 - FINDINGS AND RECOMMENDATION

equipment, DIRECTV-specific training, and identification credentials specific to DIRECTV.
Amended Complaint, #4, ¶ 39.  Plaintiffs additionally allege reporting to DIRECTV and
coordinating with DIRECTV employees after each completed satellite installation job.  Amended
Complaint, #4, ¶ 21.

On this record, I find that Plaintiffs have alleged sufficient facts to support a claim resting
on an employment relationship such that Plaintiffs' claim survives DIRECTV's Rule 12(b)(6)
motion to dismiss.

## II.    Minimum and Overtime Violations

DIRECTV next moves against Plaintiffs' claims alleging failure to pay overtime and
minimum wages, which are based in part on allegations that Plaintiffs (1) were routinely
subjected to a wage rate that was less than the applicable minimum wage because they were not
compensated for all hours worked; (2) were unlawfully deprived of overtime compensation; (3)
were not reimbursed by DIRECTV for necessary business expenses; and (4) were subject to
"charge backs" from their pay.  Amended Complaint, #4, ¶¶ 62, 64, 68.

DIRECTV argues that Plaintiffs have failed to plead a plausible claim insofar as Plaintiffs
have not alleged: (1) the number of hours worked for which they did not receive compensation;
(2) the specific weeks during which those hours were worked; (3) their rate of pay; (4) the
business expenses for which they did not received reimbursement; and (5) the amount of charge
backs deducted from their pay.  Def.'s Motion, #15, 13.  DIRECTV relies heavily on the
standards for pleading overtime and wage claims under FLSA set forth by the Ninth Circuit in
*Landers v. Quality Communications, Inc.*, 771 F.3d 638 (9th Cir. 2014).

The parties concede that *Landers* does not require a detailed account of overtime hours

worked or weeks during which overtime was not paid, as the court held that a plaintiff "may
establish a plausible claim by estimating the length of her average workweek during the
applicable period and the average rate at which she was paid, the amount of overtime wages she
believes she is owed, or any other facts that will permit the court to find plausibility." *Landers v.
Quality Communications, Inc.*, 771 F.3d at 645. The *Landers* court did require, however, that a
plaintiff must recite more than conclusory allegations that follow the statutory language in order
to survive a Rule 12(b)(6) motion. *Id.* at 644.

In terms of Plaintiffs' overtime claims, a key requirement cited in *Landers*, which
DIRECTV highlights in its arguments, is that, "at a minimum, a plaintiff asserting a violation of
the FLSA overtime provisions must allege that she worked more than forty hours in a given
workweek without being compensated for the hours worked in excess of forty during that week."
*Id.* at 645. While the *Landers* court did not require the plaintiffs in that case to plead the
overtime compensation allegedly owed to them "with mathematical precision," it did state that
"they should be able to specify at least one workweek in which they worked in excess of forty
hours and were not paid overtime wages." *Id.* at 646. DIRECTV argues, therefore, that
Plaintiffs' failure to pinpoint a specific workweek in their factual allegations supporting the
FLSA minimum wage and overtime claims cause those claims to fall short of the pleading
requirements of *Landers*.

In this case, Plaintiffs allege that they "routinely worked more than 40 hours per week,"
and that DIRECTV's policies and practices "resulted in [Plaintiffs] being routinely subjected to
working at an effective wage rate of less than the applicable minimum wage." Amended
Complaint, #4, ¶¶ 62, 64, 68. *Landers* clearly holds that a plaintiff fails to state a claim under the

13 - FINDINGS AND RECOMMENDATION

FLSA by alleging only that he or she worked "more than 40 hours per week." *Landers v. Quality Communications, Inc.*, 771 F.3d at 645. Plaintiffs in this case do not identify a date-specific workweek during which they worked in excess of 40 hours, and DIRECTV argues therefore that Plaintiffs' failure falls short of the standard articulated in *Landers. See Perez v. Wells Fargo & Co.*, No. C14–0989 PJH, 2014 WL 6997618, at *7 (N.D. Cal. Dec.11, 2014) (finding that under *Landers*, allegations that plaintiffs "regularly" or "consistently" worked more than 40 hours a week fall short of the *Iqbal/Twombly* standard).

I disagree with DIRECTV on these grounds, as an isolated reading of the "specific workweek" language from *Landers* is improper.

In the brief time since the *Landers* opinion was issued, several district courts have offered varying interpretations of the rigors imposed by the pleading standards set forth in that case. *Compare Cardoza v. Bloomin' Brands, Inc.*, 2015 WL 476182 at *1 (D. Nev. Feb. 5, 2015) (holding that plaintiffs satisfied *Landers* by alleging that they had not been paid overtime "[a]t least once during the past three years"), *with Perez*, 2014 WL 6997618, at *7 (considering the failure to plead facts regarding a specific workweek the most important in an array of factual insufficiencies and affirming dismissal on those grounds). Importantly, a recent Ninth Circuit decision shed additional light on the court's own interpretation of the language and standards it applied in *Landers. See Boon v. Canon Business Solutions, Inc.*, 2015 WL 675112 at *1 (9th Cir. Feb. 18, 2015). In *Boon*, the court reviewed a district court's dismissal of the plaintiff's claim for failure to state a claim and failing to plead with specificity as described in *Landers. Id.* The court applied the general pleading standards of *Twombly* and *Iqbal* that govern Rule 12(b)(6) motions and then reiterated the *Landers* pleading standard, holding that "detailed factual

allegations regarding the number of overtime hours worked are not required to state a plausible

claim." *Boon*, 2015 WL 675112 at \*1, citing *Landers*, 771 F.3d at 644.  The court proceeded to

reverse the district court for requiring, in order to state a claim, (1) detailed estimates of

uncompensated time; (2) estimates of how often plaintiffs went uncompensated; (3) and the rate

of pay at which the plaintiff normally worked.  *Id.*  The *Boon* court flatly rejected these

requirements based on the standard articulated in *Landers*, above.  *Id.*  The court went on, to

discuss the "specific workweek" standard on which DIRECTV's motion partly rests, ultimatley

concluding that the plaintiff met the general pleading requirements as well as the *Landers*

"specific workweek" standard simply by "identif[ying] tasks for which he was not paid and

alleg[ing] that he regularly worked more than eight hours in a day and forty hours in a week."

*Boon*, 2015 WL 675112 at \*1.  Based on Plaintiff Patrick's and Plaintiff Berger's allegations that

they "routinely" worked 50 and 60 hours per week, respectively, as well as their allegations that

many of those hours were unpaid and they were not paid overtime compensation, Amended

Complaint, #4, ¶¶ 62, 64, 66, Plaintiffs in the instant case have at least met the threshold

articulated in *Landers* and clarified in *Boon* by alleging that they have been deprived of the

wages to which they are allegedly entitled.  I find no reason to deviate from the Ninth Circuit's

analysis of its own standard.

DIRECTV posited at oral argument that, should this court adopt the Ninth Circuit's

interpretation of the *Landers* standard as applied in *Boon*, Plaintiffs' minimum wage claim fails

nonetheless.  DIRECTV argues that Plaintiffs' failure to plead numerically an effective wage rate

and precisely how that rate was allegedly reduced is insufficient to state a claim.  I disagree.

Plaintiffs need not plead with "mathematical precision," and are entitled to draw on personal

15 - FINDINGS AND RECOMMENDATION

experience and memory in order to allege facts demonstrating they received less than minimum pay. *See Landers,* 771 F.3d at 646. Here, Plaintiffs' allege that they spent "many unpaid" hours per week performing tasks for the benefit of DIRECTV; that DIRECTV had a policy of imposing charge backs wherein it deducted amounts from Plaintiffs' pay if there were issues with an equipment installation job; that Plaintiffs were made to purchase supplies necessary to perform their job without reimbursement; and that Plaintiffs were not paid for integral tasks necessary for their primary task of installing DIRECT satellite television equipment. Amended Complaint, #4, ¶¶ 51, 52, 53, 63, 67, 68. Plaintiffs allege that these conditions caused them to be paid an effective wage rate of less than the applicable minimum wage. *Id.* at ¶ 68. Any argument that Plaintiffs must go beyond alleging all of these conditions of their employment and provide an "estimate of how much uncompensated time was [worked], how often, and at what rate" is inconsistent with *Landers*. *Boon*, 2015 WL 675112 at *1.

Considering the facts in the light most favorable to the Plaintiffs, I find that the *Landers* standard, as analyzed by the Ninth Circuit in *Boon*, is satisfied with regard to Plaintiffs overtime and minimum wage claims brought under the FLSA. The general pleading requirements to survive a Rule 12(b)(6) motion to dismiss are similarly satisfied. Thus, DIRECTV's motion to dismiss Plaintiffs' overtime and minimum wage claims for failure to allege sufficient facts should be denied.

## III.    Final Pay Claim Under ORS 652.150

DIRECTV next argues that Plaintiffs' Final Pay Claim falls short of the Rule 12(b)(6) standard. DIRECTV points to a single allegation in the Amended Complaint supporting the Final Pay Claim: "Defendants willfully failed to pay to plaintiffs all sums due to them at the time

16 - FINDINGS AND RECOMMENDATION

the [sic] termination from employment or within five days thereafter." Amended Complaint, #4,

¶ 83. DIRECTV argues that Plaintiffs' claim under ORS 652.150 fails insofar as Plaintiffs did

not plead (1) that they were terminated; (2) when they were terminated; (3) how much they were

owed at termination; (4) how much they were paid as final pay at termination; (5) when they

received final pay; (6) the grounds for their termination; and (7) the existence and content of any

written notices of nonpayment after termination.  Def.'s Motion, #15, 18 (citing Amended

Complaint, #4, ¶ 83, 84).

    DIRECTV points the court to *Brown v. Mojo Records,* No. CV-00-286-ST, 2000 WL

33244473 at *9 (D. Or. June 6, 2000), to support dismissal of Plaintiffs' Final Pay Claim under

Rule 12(b)(6) given the alleged factual insufficiencies in Plaintiffs' Amended Complaint.  In that

case, the court did not dismiss that claim on insufficient factual allegations, as DIRECTV moves

for here.  Instead, the *Brown* court dismissed the final pay claim with prejudice because plaintiffs

conceded that no employer-employee relationship existed between them and defendants, failing

to give rise to a claim under ORS 652.150.  *Brown v. Mojo Records*, 2000 WL 33244473 at *9.

Although that case is distinguishable, as Plaintiffs in the instant case argue that an employer-

employee relationship does in fact exist, I nonetheless agree with DIRECTV that the factual

allegations in Plaintiffs' Amended Complaint fall short of establishing a claim under ORS

652.140 and ORS 652.150.

    Plaintiffs argue that "the elements necessary to support a claim for penalty under

[652.150] are simple and straightforward."[2]  Pl.'s Response, #29, 22.  I agree.  I also agree with

---

    [2] Plaintiffs refer to ORS 162.150 in this section of their briefing.  Pl.'s Response, #29,
21–22.  I construe all references to ORS 162.150 as references to ORS 652.150, the relevant
statute.

17 - FINDINGS AND RECOMMENDATION

Plaintiffs' assertion that no clear authority requires them to plead the specific facts listed in DIRECTV's motion and above. *Id.* However, by its terms, ORS 652.150 requires that "if an employer willfully fails to pay any wages or compensation of any employee whose employment ceases . . . then, as a penalty for the nonpayment, the wages or compensation of the employee shall continue from the due date thereof at the same hourly rate . . . until action therefor is commenced." ORS 652.150. Thus, in order to state a claim under ORS 652.150 upon which relief can be granted, Plaintiffs should provide relevant factual allegations to show, at the very least, that their alleged employment with DIRECTV has ceased, when that employment ceased, and whether there was any written notice of nonpayment pursuant to ORS 652.150(2).

Further, ORS 652.150 is a penalty provision that is invoked upon establishment of a violation of ORS 652.140. *See* ORS 652.150(1). It appears to be Plaintiffs' position that the same failures to pay minimum and overtime wages due and owing at each regularly scheduled pay period that underlie their FLSA claims give rise their Final Pay Claim under ORS 652.140. That is, Plaintiffs do not allege that DIRECTV or any HSP proffered final payment of wages in an untimely fashion or failed to tender compensation in connection with work performed during Plaintiffs' final pay period, but rather that DIRECTV failed to cure the accumulated failures to pay in full alleged to underlie the FLSA claims prior to termination. ORS 652.140 provides in relevant part as follows:

(1)     When an employer discharges an employee or when employment is terminated by mutual agreement, all wages earned and unpaid at the time of the discharge or termination become due and payable not later than the end of the first business day after the discharge or termination.

(2)     (a)     When an employee who does not have a contract for a definite period quits employment, all wages earned and unpaid at the time of quitting

become due and payable immediately if the employee has given to the employer not less than 48 hours' notice, excluding Saturdays, Sundays and holidays, of intention to quit employment.

(b)     Except as provided in paragraph (c) of this subsection, if the employee has not given to the employer the notice described in paragraph (a) of this subsection, the wages become due and payable within five days, excluding Saturdays, Sundays and holidays, after the employee has quit, or at the next regularly scheduled payday after the employee has quit, whichever event first occurs.

(c)     If the employee has not given to the employer the notice described in paragraph (a) of this subsection and if the employee is regularly required to submit time records to the employer to enable the employer to determine the wages due the employee, within five days after the employee has quit the employer shall pay the employee the wages the employer estimates are due and payable. Within five days after the employee has submitted the time records, all wages earned and unpaid become due and payable.

Or. Rev. Stat. 652.140(1) and (2).

The Oregon Court of Appeals has twice addressed the question whether misconduct underlying a failure to pay wages or overtime wages systematically over the course of an employee's employment can also give rise to a failure to pay termination wages if not corrected by the time the employment ends. *Hurger v. Hyatt Lake Resort, Inc.*, 170 Or. App. 320, 323 (2000), rejected the proposition that failure to pay wages due at termination could constitute a new, independent violation of a minimum wage or overtime statute, but did not establish conclusively that there could be no claim under ORS 652.140 premised on an ongoing systematic underpayment of wages not corrected prior to the termination of employment.

In *Cornier v. Tulacz*, 176 Or. App. 245 (2001), the court of appeals came closer to establishing that proposition, opining that if a plaintiff presented two such claims for two penalties under the two different statutory schemes based on the same employer misconduct,

19 - FINDINGS AND RECOMMENDATION

"one of those claims would probably fail under *Hurger*." *Cornier*, 176 Or. App. at 250.

While these cases fall short of conclusively establishing that an ORS 652.140 claim will not lie based on ongoing-underpayment facts, the courts of this district have consistently interpreted them as standing collectively for that proposition. *See, e.g.*, *Mathis v. Hous. Auth.*, 242 F. Supp. 2d 777, 788 (D. Or. 2002); *Cooper v. Thomason*, Case No. 06-1018-KI, 2006 U.S. Dist. LEXIS 76307, *6–9 (D. Or. Oct. 19, 2006) (collecting cases). I see no grounds for deviation from that reasonable interpretation.

Based on the foregoing, DIRECTV's motion to dismiss should be granted as to Plaintiffs' Final Pay Claim under ORS 652.150, and that claim should be dismissed without prejudice. Plaintiffs' should be granted leave to amend to cure the deficiencies of that claim.

## CONCLUSION

For the reasons discussed above, DIRECTV's motion to dismiss (#15) should be denied in part as it applies to Plaintiffs' overtime and minimum wage claims.

DIRECTV's motion should be granted in part as it applies to Plaintiffs' claim alleging violation of ORS 652.150 and that claim should be dismissed without prejudice with leave to amend.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings

and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de novo consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 6th day of March, 2015.

Honorable Paul Papak
United States Magistrate Judge

21 - FINDINGS AND RECOMMENDATION