IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ADAM BERGER and MARK PATRICK,

    Plaintiffs,

                                      3:14-CV-01661-PK

v.                                     FINDINGS AND
                                      RECOMMENDATION

DIRECTV, INC. and DIRECTV, LLC,

    Defendant.

PAPAK, Magistrate Judge:

On October 10, 2014, Plaintiffs Adam Berger and Mark Patrick filed an action for damages against Defendant DIRECTV alleging that DIRECTV failed to pay Plaintiffs minimum and overtime wages, failed to properly calculate Plaintiffs' regular rate of pay, and issued deductions from Plaintiffs' pay in violation of the Fair Labor Standards Act ("FLSA"). This court has jurisdiction over this claim pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

Now before the court is DIRECTV's motion to stay proceedings and compel arbitration (#42) with respect to Plaintiff Patrick's claims, consistent with the arbitration agreement entered into by Patrick at the time of his employment with DIRECTV's predecessor, 180 Connect, Inc. ("180 Connect"). For the reasons set forth below, DIRECTV's motion should be granted and these proceedings should be stayed pending arbitration.

Page 1 - FINDINGS AND RECOMMENDATION

## PROCEDURAL BACKGROUND

Plaintiffs filed their amended complaint (#4) on November 12, 2014, alleging violations of the FLSA and Oregon law. Specifically, Plaintiffs allege that DIRECTV's FLSA violations included: (1) "failing to pay all minimum wage and overtime wages due to Plaintiffs"; (2) "failing to properly calculate Plaintiffs' regular rate of pay for determining the overtime premium owed"; and (3) improperly deducting money from Plaintiff's pay. Amended Complaint, #4, ¶ 75. Plaintiffs alleged that those failures violate ORS 652.010 and 652.261, and that DIRECTV's willful failure to pay Plaintiffs all sums due to them upon termination violates ORS 652.105. *Id.* at ¶ 81, 83.

On February 5, 2015, the parties stipulated to stay proceedings pending a decision from the Judicial Panel on Multidistrict Litigation ("MDL Panel") based on Plaintiff's Motion for Consolidation and Transfer of Related Action. The MDL Panel issued an order (#30-1) on February 6, 2015, denying transfer of this action and this court lifted the stay on February 10, 2015 (#28).

On January 5, 2015, DIRECTV filed its motion to dismiss (#15). On February 12, 2015, Plaintiffs filed their response in opposition to DIRECTV's motion (#29). On February 26, 2015, DIRECTV filed a reply in support of its motion (#31). On April 16, 2015, Judge Hernández issued an order (#35) adopting my Findings & Recommendations. The motion was denied in part as it applies to Plaintiffs' overtime and minimum wage claims and granted it in part as it applies to Plaintiffs' claim alleging violation of ORS 652.150, and the latter claims were dismissed from this action.

On May 27, 2015, DIRECTV filed its motion to compel arbitration (#42) with respect to

Page 2 - FINDINGS AND RECOMMENDATION

Patrick's remaining claims. On June 19, 2015, Patrick filed his response (#48) in opposition to DIRECTV's motion. On July 6, 2015, DIRECTV filed its reply (#49) in support of its motion to dismiss.

## FACTUAL BACKGROUND

Patrick is a technician who formerly installed DIRECTV satellite television equipment in Oregon. Patrick worked for 180 Connect, a "subordinate entit[y] that [was] ultimately acquired by DIRECTV" and operated as an independent contractor for DIRECTV. Amended Complaint, #4, ¶ 12. DIRECTV oversees and operates a "Provider Network" comprised of intermediary entities known as "Home Service Providers" and secondary intermediaries called "Secondary Providers." Amended Complaint, #4, ¶ 14. DIRECTV has merged with many of the Home Service Providers, including, as relevant here, 180 Connect. Amended Complaint, #4, ¶ 16. As part of his employment with 180 Connect, Patrick signed an agreement to arbitrate disputes. The arbitration agreement provides as follows:

> 1.    This Arbitration Agreement ("Agreement") made this 29 day of October 2007, is between 180 Connect, Inc., including all of its affiliates **(the term "affiliates" means companies controlling, controlled by, or under common control with 180 Connect, Inc. 180 Connect, Inc., and its affiliates are individually and collectively referred to herein as "180 Connect")** and Mark L. Patrick ("Employee"). In consideration of the Employee's employment with 180 Connect (and/or its affiliates) as good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Employee and 180 Connect agree that, except as otherwise provided in this Agreement, **any claim, controversy and/or dispute between them, arising out of and/or in any way related to Employee's application for employment, employment, and/or termination of employment, whenever and wherever brought,** shall be resolved by arbitration.

Def. Ex. A., #43, 1 (emphasis added). Patrick filed his Complaint (#4) against DIRECTV following the acquisition of 180 Connect. After the claim survived DIRECTV's motion to

Page 3 - FINDINGS AND RECOMMENDATION

dismiss (#15), DIRECTV filed the instant motion to enforce the arbitration agreement Patrick signed with 180 Connect.

## LEGAL STANDARD

Arbitration agreements are governed by the Federal Arbitration Act ("FAA"). As the Ninth Circuit explained in *Johnson v. Gruma Corp.*, 614 F.3d 1062 (9th Cir. 2010):

> The FAA, while it does not itself create independent federal jurisdiction, creates a body of federal substantive law establishing and regulating arbitration agreements that come within the FAA's purview. When an agreement falls within the purview of the FAA, there is a strong default presumption that the FAA, not state law, supplies the rules for arbitration. To overcome that presumption, parties to an arbitration agreement must evidence a "clear intent" to incorporate state law rules for arbitration.

*Johnson*, 614 F.3d at 1066 (citations, internal quotation marks, and internal modifications omitted).

The FAA generally governs arbitration provisions of employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114 (2001). Where the FAA governs, "state law may be applied if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally," but courts cannot "invalidate arbitration agreements under state laws applicable only to arbitration provisions." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996).

## ANALYSIS

Patrick makes five arguments in opposition to DIRECTV's motion (#49): (1) DIRECTV lacks standing to enforce the arbitration agreement; (2) Patrick is not estopped from arguing that DIRECTV was never his joint employer; (3) the agreement is unconscionable; (4) DIRECTV has waived its right to arbitration; (5) if DIRECTV prevails on the motion, these proceedings should

Page 4 - FINDINGS AND RECOMMENDATION

be stayed pending arbitration and Patrick's claims should not be dismissed outright. I will address each of these arguments in turn.

### I.     DIRECTV's Standing to Compel Arbitration

Patrick argues that DIRECTV lacks standing to compel arbitration because it was not a party to the agreement at the time of its formation and the unlawful acts alleged against DIRECTV do not relate to its acts as an agent of 180 Connect. Under the FAA, arbitration contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. This requires courts to apply substantive state contract law. *Doctor's Associates, Inc*, 517 U.S. at 681. Additionally, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983). Patrick cites Ninth Circuit authority to support his contention that only signatories and their agents can enforce arbitration agreements. *Britton v. Co-Op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993); *Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185, 1186 (9th Cir. 1986); *Amsil Holdings, Ltd. v. Clarium Capital Mgmt., LLC*, 2006 WL 3949332, at 8* (N.D. Cal. Dec. 21, 2006). These cases originated from California and Arizona, however, and therefore do not address the Oregon contract law that is controlling in this case. *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (federal law preempts state contract law only insofar as it frustrates FAA's purpose); *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) ("state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally") (emphasis in original).

Page 5 - FINDINGS AND RECOMMENDATION

Oregon law recognizes "a number of rationales for permitting nonsignatory defendants to invoke arbitration clauses in claims against them by signatories to the contract." *Livingston v. Metro. Pediatrics, LLC*, 234 Or. App. 137, 149–50 (2010). Rather than focusing on the identity of the party seeking to enforce the agreement, Oregon courts place the language of the agreement at the "center of the inquiry" and resolve any ambiguities in line with the public policy in favor of arbitration. *Id.* at 149. Broad language in arbitration agreements evidences the parties' intent to allow nonsignatories to enforce its terms. *See Livingston*, 234 Or. App. at 150 (concluding arbitration agreement that applied to any dispute "arising out of or relating to" employment relationship was broad enough to permit enforcement by nonsignatories).

Here, the applicable arbitration agreement is even broader than the agreement in *Livingston* and covers "any claim, controversy and/or dispute between [the parties], arising out of and/or in any way related to Employee's application for employment, employment, and/or termination of employment, whenever and wherever brought." Def. Ex. A., #43, 1. Additionally, the agreement expressly defines the employer as not only 180 Connect itself, but also "all . . . companies controlling, controlled by, or under common control with 180 Connect, Inc." *Id.* These expansive terms do not rely on a theory of agency and plainly include DIRECTV, which assumed all of 180 Connect's "assets, debts, rights, responsibilities, liabilities and obligations," including "all the rights and obligations arising from 180 Connect's employee relationships.'" Def. Ex. A., #49, 2. Accordingly, DIRECTV has standing to compel arbitration because the terms of the agreement are broad enough to permit enforcement by nonsignatories and DIRECTV is a "controlling party" as defined in the agreement.

## II. Judicial Estoppel

Patrick relies in part on DIRECTV's claim in its motion to dismiss (#15) that it "was not the joint employer of Plaintiff Patrick at any time" to now prove DIRECTV lacks standing. Pl.'s Opp. to Mot. to Compel Arb., #48, 6. DIRECTV argues Plaintiffs are estopped from making this argument because they earlier asserted that: (1) DIRECTV controlled "the essential terms of Plaintiffs' employment"; (2) "[a]lthough hiring is generally done at the Providers' level, DIRECTV controls the details of Plaintiffs' day-to-day work"; (3) "[t]hrough the Providers, DIRECTV exercises significant control over . . . what work Plaintiffs performed, where that work was performed, when that work was performed, and how that work was performed." *See* Complaint ¶¶ 11–26, 31. Plaintiffs also successfully defeated DIRECTV's motion to dismiss (#15) in part by alleging sufficient facts to support the existence of an employee-employer relationship with DIRECTV. Pl.'s Resp. in Opp. to Def. Mot. to Dismiss, #29, 8–14.

The doctrine of judicial estoppel prevents a party who has successfully asserted a position in one action from changing that position in an attempt to prevail in a second action. *Day v. Advanced M & D Sales, Inc.*, 336 Or. 511, 524 (2004). Under Oregon law, application of judicial estoppel depends on the existence of three predicates: (1) a benefit; (2) obtained in a different judicial proceeding; (3) by means of asserting a position inconsistent with a position asserted in a later judicial proceeding. *Sugar and Sugar*, 212 Or. App. 465, 470 (2007). "Because judicial estoppel is primarily concerned with the integrity of the *judicial* process . . . it does not depend for its application on a showing that the party . . . detrimentally relied on the other party's prior inconsistent position." *Hampton Tree Farms, Inc. v. Jewett*, 320 Or. 599, 612 (1995) (emphasis in original).

Page 7 - FINDINGS AND RECOMMENDATION

Here, I find that Plaintiffs are estopped from adopting DIRECTV's earlier position that it was not at any time their joint employer. As DIRECTV rightly points out, Plaintiffs must prove that DIRECTV was their joint employer to prevail on their Complaint, meaning that—if Plaintiffs are successful at trial—DIRECTV will have been wrongly denied its right to arbitration. Def.'s Reply in Supp. of Mot. to Compel Arb., #49, 10. This is precisely the kind of manipulation of the judicial system that Oregon courts have recognized as triggering judicial estoppel. *See Hallberg v. City of Portland*, 230 Or. App. 355, 359, 215 P.3d 866, 868 (2009) (party was estopped from claiming indemnity against his employer for prior proceeding where he successfully argued the claims did not arise in the course of performing his employment). Consequently, I find that Plaintiffs are estopped from now adopting DIRECTV's earlier position as their own.

### III.    Unconscionability

Patrick argues that his arbitration agreement with DIRECTV is unconscionable and therefore unenforceable. Under Oregon law, unconscionability may be procedural or substantive. *Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543, 555 (2014). Substantive unconscionability focuses on whether the terms of the contract conflict with public policy. *Id.* at 556. Procedural unconscionability determines whether the circumstances of the contract's formation evidence oppression or surprise. *Id.* at 555. "Unconscionability is assessed as of the time of contract formation, and the doctrine applies to contract terms rather than to contract performance." *Id.* at 543, *citing Best v. U.S. National Bank*, 303 Or. 557, 560 (1987) *and Tolbert v. First National Bank*, 312 Or. 485, 492 n.4 (1991). Bad faith on the part of one of the parties does not automatically or necessarily render an agreement unconscionable. *See Best*, 303 Or. at 557 (distinguishing doctrines of bad faith and unconscionability). Oregon courts are also very reluctant to disturb

Page 8 - FINDINGS AND RECOMMENDATION

arbitration agreements "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Livingston v. Metropolitan Pediatrics, LLC*, 234 Or. App. 137, 152 (2010) (internal quotation marks omitted).

Here, Patrick merely asserts that DIRECTV's "demonstrated abuse of the arbitral process" in unrelated cases proves that this arbitration agreement is unconscionable. Patrick's novel theory of unconscionability is wholly unfounded in Oregon law. Beyond that, he cites no persuasive precedent from other jurisdictions to bolster his position. Patrick does not articulate any substantive issues with the terms of the contract, nor does he discuss any procedural aspects of the contract's formation that indicate oppression or surprise. Therefore, I reject Patrick's unconscionability argument.

## IV. DIRECTV's Waiver of Arbitration

Next, Patrick contends that DIRECTV waived its right to arbitration. Under Oregon and federal law, however, this is a procedural matter for the arbitrator—not the court—to decide. *See, e.g., Livingston v. Metro. Pediatrics, LLC*, 234 Or. App. 127, 145 ("waiver. . . is a procedural rather than substantive defense to arbitrability . . . we conclude for that reason that . . . waiver of arbitrability involves a condition precedent to be decided by the arbitrator, rather than the court"); *Industra/Matrix Joint Venture v. Pope & Talbot*, 200 Or. App. 248, 260–61, 113 P.3d 961 (2005), *aff'd*, 341 Or. 321, 142 P.3d 1044 (2006); *BG Grp., PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1207 (2014) ("courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration . . . These procedural matters include claims of waiver."); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–85 (2002). Federal policy also favors submitting the issue of waiver to

Page 9 - FINDINGS AND RECOMMENDATION

arbitration. *See Moses H. Cone*, 460 U.S. at 24–25 ("as matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is . . . the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). Accordingly, I do not reach this issue.

V.      **Proceedings with Respect to Patrick's Claims Should Be Stayed Pending Arbitration**

Under the FAA, "a district court may either stay the action or dismiss it outright when . . . the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloombingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). "In some cases . . . it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21, n.24. Here, DIRECTV argues that outright dismissal of Patrick's claims is the most appropriate and efficient course because all of his claims are within the scope of the arbitration agreement. Def.'s Mot. to Compel Arb., #47, 8. Patrick argues for a stay of proceedings because of DIRECTV's alleged failure to arbitrate in good faith. Pl.'s Opp. to Def.'s Mot. to Compel Arb., #48, 8. As explained above, I find Patrick's position to be without legal foundation. Nonetheless, I conclude that Patrick's claims should not be dismissed at this juncture because—while I do not reach the merits of the waiver issue here—there appears to be a material dispute as to whether DIRECTV has waived its right to arbitration. Should Patrick prevail on that issue in arbitration, his joint claim with Berger can proceed in this court. Consequently, at this early stage, I find that the court should stay proceedings with respect to both Patrick and Berger pending resolution of this question in arbitration. The stay should be lifted with respect to Berger's claims should the arbitrator

conclude that DIRECTV has not waived its right to arbitrate Patrick's claims.

## CONCLUSION

For the reasons set forth above, DIRECTV's Motion to Compel Arbitration (#42) should be granted and further court proceedings should be stayed pending resolution of that arbitration.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 21st day of August, 2015.

_____
Honorable Paul Papak
United States Magistrate Judge